UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY D. MOSSOIAN,

    Plaintiff,

v.                                                                                          Case No. 06-11272

DAIMLERCHRYSLER CORP., a                                      HONORABLE AVERN COHN
Delaware Corp., and ESIS, INC., a
Pennsylvania Corp.,

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT BASED ON THE ADMINISTRATIVE RECORD AND DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT**

I.  Introduction

This is an employee benefits case governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA).  Plaintiff Gary D. Mossoian (Mossoian) is suing defendants DaimlerChrylser Corporation (DC) and ESIS, Inc. (ESIS) claiming wrongful termination of his long term disability (LTD) benefits which Mossoian applied for and began receiving in 1998 because he was disabled as a result of an injury to his left knee.  The LTD benefits were terminated in 2004 after an updated review.

Before the Court is DC and ESIS's Motion for Judgment Based on the Administrative Record and Mossoian's Motion for Entry of Judgment.  Essentially, DC and ESIS say that the decision was not arbitrary or capricious as significant evidence

exists in the administrative record to find that Mossoian is not disabled under the definition of "disability" reflected in the plan. Mossoian says that the record is clear that he cannot perform any jobs at DC within the restrictions imposed by his treating physicians and therefore he is disabled within the meaning of the plan.

For the reasons that follow, defendants' motion is GRANTED and Mossoian's motion is DENIED.

II. Legal Standard - Motion for Entry of Judgment

In <u>Wilkins v. Baptist Healthcare System, Inc.</u>, 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in the Sixth Circuit in denial of benefits actions under ERISA. In <u>Wilkins</u>, the court of appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. 150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in <u>Wilkins</u>[1] by rendering findings of fact and conclusions of law based upon the

---

[1] The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a <u>de novo</u> review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process

administrative record.[2]  See Eriksen v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

### III.  Analysis

#### A.  Findings of Fact

The following facts are gleaned from the administrative record.

In 1986, Mossoian began working for DC predecessor, Chrysler, at the Dodge City Warren Truck Assembly Plant in Warren, Michigan as a maintenance supervisor. As part of the terms and conditions of his employment, Mossoian was a participant in the DC Long Term Disability Benefit Plan (the plan), governed by ERISA.  Although DC is the "Plan Administrator" under the plan, DC apparently designated ESIS as a third party administrator.[3]

In November 1988, Mossoian fell from a ladder at work and injured his left knee. In 1989, he underwent arthrosporic surgery and six months of physical therapy and

---

> afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
> 3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
> 150 F.3d at 619.

[2]  As will be explained, Mossoian has submitted materials outside of the administrative record in support of his claim which relate to the qualifications of the physician who conducted the independent medical examination.  Mossoian says that these materials can be considered because they relate to his argument regarding procedural irregularities in the claims process.  The Court will discuss this infra.

[3]Throughout this factual section, the Court will refer to DC and ESIS where appropriate.

rehabilitation.  He apparently worked with restrictions and worked only briefly before being laid off from April 1990 until December 1997.  In December 1997, he was placed on short term disability under DC Disability Absence Program (DAP).  His last day of work at DC was December 1, 1997.  Apparently on that day he was assigned to work in an oily area and slipped and fell after being at work for only four hours.  At the time of his last day of work, he held the position of a grade VII Maintenance Tool Supervisor, a salaried position.  The position required standing, sitting, climbing upon and down steps and ladders, bending, stooping, and walking.

Mossoian's DAP benefits terminated in December 1998 where he was considered for, and began receiving, LTD benefits, effective December 15, 1998.

In March 2000, Mossoian and DC executed a settlement agreement and release relating to claims of wrongful termination and discrimination which were the subject of a lawsuit filed by Mossoian against DC in state court.  The settlement agreement provided, inter alia, that it would not affect Mossoian's entitlement to any disability benefits.

In September 2003, Mossoian had back surgery.

In February 2004, ESIS contacted Mossoian stating that it was reviewing his LTD claim and needed him to provide medical information to support his need for continued LTD benefits.

Mossoian submitted a "Disability Attending Physician's Statement" dated April 29, 2004 from his treating Physician, Dr. William Barker.  Although the "Description" of the disability lists "lumbar radicolpathy chronic left knee pain...", Dr. Barker's statement indicated that he the specific symptoms resulting in "disability" as "low back pain and

4

numbness (rt) knee." Dr. Barker did not render any conclusion as to whether Mossoian was disabled and did not address the condition of his left knee.

On June 1, 2004, ESIS requested additional information. When no additional medical information was forthcoming, by letter dated June 18, 2004, Mossoian's LTD benefits were terminated "based on information provided by your treating Physician." However, DC continued to provide Mossoian with LTD benefits while his case was reviewed.

Mossoian was directed to submit to an independent medical examination (IME) on August 10, 2004. The exam was conducted by Dr. Shrirang Lele, who represented he was Board Certified in Orthopedic Surgery. After conducting the exam, Dr. Lele opined that Mossoian's back and left knee were "functionally normal" and that he could return to work without restrictions. By letters dated August 10, 2004 and August 11, 2004, Mossoian was notified that his LTD benefits would be terminated as he was able to work based on the results of the IME.

In response to the termination, Mossoian obtained a letter from his former treating physician, Dr. Susan VanDellen, dated August 25, 2004, in which she opined that Mossoian has chronic left knee pain and that the physical restrictions imposed by her several years ago were still in place. These restrictions included the following: no lifting more than 20 pounds, no climbing, bending or squatting, four hours sitting and hour hours standing a day, and no more than 40 hours of work a week in a non-slippery environment. Dr. VanDellen did not opine that Mossoian was incapable of working or state that he was disabled.

Based on Dr. VanDellen's opinion, which ESIS did not believe established

disability, and the results of IME, ESIS notified Mossoian by letter dated August 31 2004 that his benefits were being terminated.

By letter dated November 4, 2004 from Mossoian's attorney, he appealed the denial of his LTD benefits. In the appeal letter, Mossoian stated that he is unable to perform the duties of his former position, an Assembly Supervisor, "due to his current work restrictions" as described by Dr. VanDellen's August 25, 2004 letter and in a November 2, 2004 letter, not previously provided to DC or ESIS, from Dr. Barker. In the letter, Dr. Barker states:

> To my knowledge [Mossoian] has continued to suffer with chronic left knee pain, which has kept him from holding a job. He has been given restrictions by Dr. Susan VanDellen, which include a weight lifting restriction of 20 pounds, no climbing, bending, or squatting, 4 hours sitting and 4 hours standing daily, and restricted to 40 hour work week in an oil free environment in which the floors should not be slippery.
> Given Mr. Mossoian's chronic pain and instability of the left knee, I see no reason these restrictions should be changed in the near or distance [sic] future, for this is a chronic condition.
> Currently, I am treating his [sic] for his chronic pain with Vicodin 3 times daily and for blood pressure.

AR at 183.

ESIS reviewed the additional medical evidence (Dr. Barker's letter) and concluded that the denial of benefits should be upheld. By letter dated December 20, 2004, DC issued its decision on Mossoian's appeal, stating that "based on our records, including the results of your [IME] which is final and binding... you are able to work" AR at 186. However, DC also said that because "the Warren Truck Assembly Plant has informed us that there are currently no Assembly Supervisory Positions open...you will be placed on 'layoff' effective 12/21/04." Id.

Mossoian then filed an action in state court to enforce the 2000 settlement

agreement. The state court denied the motion.

Thereafter, Mossoian filed this action in state court which DC and ESIS removed on the grounds that it raised a federal question under ERISA.

### B.  Conclusions of Law

#### 1.  DC and ESIS as Defendants

DC and ESIS argue that ESIS is not liable because it is only the third party administrator and not a fiduciary under ERISA. The Court disagrees. Article VII of the plan provides in relevant part:

> **7.01.  Plan Administrator**.  The Plan Administrator shall be the Named Fiduciary of the Plan.  The Plan Administrator shall have the authority to control and manage the operation and administration of the Plan.  The Plan Administrator may adopt such rules, procedures and guidelines ... **The Plan Administrator may designate other persons to carry out fiduciary responsibilities under this Plan, including a TPA** [third party administrator]...

(emphasis added).

Here, DC says that ESIS is the third party administrator. As the Court reads the plan, in so naming ESIS, DC designated some fiduciary responsibility to ESIS. Thus, both parties are proper defendants. However, for convenience, DC and ESIS will be hereafter collectively referred to as "DC."

#### 2.  Standard of Review

##### a.

The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because DC has discretionary authority to construe and interpret the plan.[4]  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

---

[4] See Article VII of the Plan, specifically § 7.01, 7.03, 7.04.

101, 115 (1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). This standard is the "least demanding form of judicial review." Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988). See also Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted). See also Perez v. Aetna Life Insurance Company, (en banc) 150 F.3d 550, 555 (6th Cir. 1998).

> However, this standard is not toothless. The Sixth Circuit has explained:
>
> While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious ⋯ standard does not require us merely to rubber stamp the administrator's decision." Jones v. Metropolitan Life Ins. Co., 385 F.3d 654, 661 (6th Cir.2004) (citing McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir.2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." McDonald, 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." Id.

Moon v. UNUM Provident Corp., 405 F.3d 373, 387 (6th Cir. 2005).

b.

Mossoian also says that DC was operating under a conflict of interest and therefore the standard of review should be modified to reflect that conflict. Mossoian

says that because DC is both the decision maker, deciding which claims are covered, and the payor of those claims, it has a conflict of interest. DC does specifically deny that it is the decision-maker and payor. Although a claim of an internal, structural conflict of interest are insufficient to alter the standard of review, see Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998), the Sixth Circuit has made clear that "the potential for self-interested decision-making is evident" in this situation and therefore "[t]he 'possible conflict of interest' inherent in this situation 'should be taken into account as a factor in determining whether [DC's] decision was arbitrary and capricious.' " Univ. Hosps. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 846 n. 4 (6th Cir. 2000)(citations omitted). See also Calvert v. Firstar Finance, Inc., 409 F.3d 286, 292 (6th Cir. 2005). Thus, the Court will take DC's conflict into account in determining whether its decision was arbitrary or capricious.

### 3. Definition of Disability

The parties agree that Mossoian must satisfy the following definition of disability:

> be "totally disabled" because of disease or injury ... after the first 24 months of disability be unable to engage in regular employment or occupation with the Corporation.

Article IV, § 4.01.

### 4. DC's Evaluation of the Medical Evidence

#### a.

DC relies on the IME of Dr. Lele to support its decision terminating Mossoian's LTD benefits. Mossoian, however, takes issue with Dr. Lele's opinion and submits evidence outside of the administrative record relative to Dr. Lele's credentials which he says render Dr. Lele's opinion "biased" and "outcome-oriented" to find that Mossoian

was able to work without restrictions. However, as DC points out, Mossoian must show that DC was biased, not Dr. Lele. Assuming arguendo, that Mossoian's evidence regarding Dr. Lele can be considered to support a claim of bias, this argument still falls short. The evidence relates to the fact that Dr. Lele represented he was board certified in Orthopedic Surgery when, as it turns out, he was not so certified at the time of the IME. While ERISA allows for a plan administrator to consult with an independent medical examiner during the claims process, it does not require that the examiner be "board certified." Rather, the regulations require that an administrator "shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii)(v)(4). Thus, whether or not Dr. Lele was board certified at the time of the IME does not ipso facto make DC's decision arbitrary or capricious. Moreover, contrary to Mossoian's argument to the contrary, there is no evidence in the administrative record that DC was aware, or should have been aware, of any issue with Dr. Lele's credentials.

Moreover, Mossoian says that Dr. Lele's report is flawed because DC failed to provide him with all of Mossoian's medical records, and specifically refers to a report from a Dr. Sultzman, dated October 1, 1990. Mossoian attaches Dr. Sultzman's report to its motion. DC, however, says that Mossoian never before submitted this report at the time the decision to terminate benefits was made. The Plan requires Mossoian, not DC, to submit all relevant medical evidence. To the extent that Mossoian says medical items are missing from the administrative record, it was his responsibility, not DC, to ensure that DC had his full and complete medical records.

Mossoian also says that DC "manipulated" the administrative record and lists

several items which he says were "omitted." This argument is without merit. As DC explains in its response, records relating to Mossoian's initial grant of benefits in 1988 are not relevant to the denial of benefits in 2004. The absence of any records from the Plant evaluations is also unfounded. Mossoian also says that certain items are "missing," however DC explains that those items are not missing and are in fact contained in the administrative record. Indeed, the Court has located those items in the administrative record. See AR at 202-210 (the Case Summary) and AR 91-98, 101, 103-105 (the 14 pages).

Overall, the Court is satisfied that DC did not manipulate the administrative record nor did DC act arbitrarily in relying on Dr. Lele's opinion in terminating Mossoian's LTD benefits

b.

Mossoian says that DC decision was arbitrary and capricious because there is no evidence that he can perform any job at DC. In support, Mossoian points to a DC document entitled "Ability to Work Determination"dated February 10, 1999 and found at AR 26. In this document, the following statement is marked:

> There is no job at this plant [Warren Truck] the employee can perform. If the employee is not considered able to perform a job at your location, indicate all other locations where he or she has seniority so that all appropriate ability to work determinations can be requested.

The document does not list any other locations. Under "Pqx" restrictions, it says "no stand greater than 2 hours with 30 minute sit down." Mossoian also points to a statement in an e-mail from an ESIS representative, Eulene C. Burnside, which states "My opinion is nothing has changed since 2000 [...] [o]ther than the fact that

[Mossoian's] pqx status was never updated, a job did not exist then. For the continuation of LTD we would need an update." AR at 140. Mossoian says that these two documents must be interpreted to mean that because there is no job at DC which he can perform within the restrictions imposed by his treating physicians, he is disabled under the Plan. Mossoian also says that the fact that the administrative record does not contain an update Ability to Work Determination, renders DC's decision arbitrary and capricious.

In response, DC says that the fact that no work may be <u>available</u> for Mossoian does not mean that he is disabled. In other works, the availability of work and entitlement to LTD benefits are not the same. The Court agrees. The definition of disability is tied to being unable to work because of "disease" or "injury," not because there is no position available. The focus is on Mossoian's medical condition, not the business dynamics of DC. To interpret the Plan otherwise would, as DC points out, open the floodgates to employees with disability claims under review for whom no job is available due to DC's business situation who would be able to stay on disability. The question for purposes of determining entitlement to LTD benefits under the Plan after 24 months, is not whether DC has a job available for the employee, but rather whether they can perform any job at DC. That definition of disability is, as the Court noted at the hearing, similar to whether the employee can perform any job in the economy inasmuch as the varied number of positions at DC replicate the general employment environment. Significantly, at no time has any doctor opined that Mossoian is incapable of performing any job at DC.

DC also notes that the Ability to Work Determination was dated in 1999 and its

relevance in 2004 - the time the termination decision was made - is questionable.  DC also pointed out at the hearing, at the time the Ability to Work Determination was made in 1999, Mossoian could satisfy the definition of disability by not being able to perform his job at DC - that of Assembly Supervisor.  That is the definition of disability during the first 24 months.  At that time, he could not.  That is different from the definition of disability he must now satisfy - which is that he cannot perform any job at DC.  As to the ESIS statement, DC says that it simply means that nothing has changed since 2000, that no job existed in 2000 that would comply with Mossoian's restrictions and the "update" needed was updated medical information, which DC endeavored to obtain.

The Court also notes that Mossoian distorts the nature of the documents and the statement by ESIS.  Indeed, after the phrase "we would need an update," Mossoian supplies his own language, in brackets, which reads "an with an ability to work determination contrary to the Work Determination."

Based on the Court's review of the extensive administrative record, DC's decision was not arbitrary or capricious.  The IME concludes that Mossoian is able to work without any restrictions.  DC did not act arbitrarily or capriciously in relying on the results of the IME.  Even without Dr. Lele's IME, Mossoian's own treating physicians opined that he is able to work with restrictions.  Although DC could have done a better job in its review by discussing the opinions of Drs. Barker and VanDellen in its denial letter, the administrative record does note that neither doctor provided objective medical evidence to support their opinions that the work restrictions put in place ten years ago were still valid.  Nowhere does either Drs. Barker or VanDellen opine that Mossoian is not able to work at all or that he is totally disabled.  They both in fact say he is capable of working,

albeit with restrictions.  Given the standard of review, including taking into account DC conflict of interest, it cannot be said that DC's decision denying benefits was arbitrary or capricious based on the medical evidence in the administrative record in light of the definition of disability.

      SO ORDERED.

                                s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE

Dated:  November 3, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 3, 2006, by electronic and/or ordinary mail.

                                s/Julie Owens
                                Case Manager, (313) 234-5160